THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROY BROWN *et al.*, Defendants-Appellants.

First District (6th Division)   Nos. 1—87—0485, 1—87—0530 cons.

Opinion filed October 27, 1989.—Modified on denial of rehearing March 23, 1990.

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis and Alison Edwards, Assistant Public Defenders, of counsel), for appellants.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI* delivered the opinion of the court:

Roy Brown and Willie McNeal were charged with possession of burglary tools and attempted residential burglary. After a bench trial in the circuit court of Cook County, both defendants received concurrent terms of 10 years for burglary and three years for possession of burglary tools.

The appeals for these defendants have been consolidated in this court. Defendant Brown in this appeal asserts that the trial court should have: (1) granted a severance of his case because of antagonistic defenses; (2) quashed his arrest and suppressed the subsequent lineup identification of him; (3) dismissed the charge of possession of burglary tools because it involved the same behavior as the burglary charge itself; and (4) allowed him to choose treatment for drug addiction under Treatment Alternatives to Street Crime (TASC) in lieu of his prison sentences. Defendant McNeal asserts in his appeal that the trial court should have: (1) excluded the evidence of another burglary committed on the same day; (2) excluded evidence of his vehicle registration unless the State first laid a proper foundation through the car dealer who sold him his car and then presented a certified copy of the registration made before the beginning of this litigation; (3) dismissed the charge of possession because there was no evidence that McNeal ever had physical possession of the burglary tool; and (4) imposed a shorter sentence because the statute under which he received an extended sentence is unconstitutionally vague.

On October 1, 1985, an attempted burglary occurred at the home of Cathleen Sayles, 5412 West Drummond Place in Chicago. Four witnesses observed a black male in the gangway of the Sayles home. Between them, these witnesses observed this male as he attempted to open Sayles' garage and basement window with a screwdriver, tucked the screwdriver into his pants, entered a car parked in front, and rode away. The witnesses also observed another black male driving the car and noted license number RHY707.

Later that evening, the police located the car and placed it under surveillance. About 40 minutes into the surveillance, Brown walked to the car, placed an object in the trunk, and left. The police followed and arrested him. Shortly thereafter, police arrested McNeal when he entered the car. In the car, the police found two items from another burglary which had also been committed the same day, 4½ blocks

---

*Justice Quinlan participated in the original opinion of the court prior to his resignation. Justice Rakowski has read the briefs and listened to the tapes of the oral argument.

from Sayles' residence.

After these arrests, Brown appeared in a lineup. There he was identified by the four witnesses from Sayles' neighborhood. The State later charged both men with attempted burglary and possession of burglary tools.

At trial, the State presented evidence to show that McNeal owned or at least controlled the burglary car. The police officer who conducted the surveillance of the car testified that McNeal tried to drive the car on the night of his arrest. McNeal's aunt testified that the members of her household, including McNeal himself, previously used the car. Finally, Rosanne Quattrocki, a manager from the motor vehicle facility in Chicago, described the normal procedure for car license registration. The State then presented a certified copy of the record for license number RHY707, which showed that: Lesley Oldsmobile had submitted a registration on July 3, 1985; the Secretary of State had issued McNeal's plates on August 7; and the records office of the Secretary of State had made a certified copy of these records on December 3.

At trial, McNeal's theory for defense was based upon mistaken identity. He argued that someone else drove the burglary car for Brown. Twice during the cross-examination, McNeal's counsel asked a witness to identify Brown. Even though these witnesses also identified Brown during the case in chief, Brown claimed that by reason of McNeal's theory of defense, he was prejudiced from his trial as a codefendant with McNeal.

The State also introduced evidence that McNeal, another person and McNeal's car were at the scene of a burglary that occurred around the same time and about 4½ blocks from the burglary attempt at Sayles' residence.

Following Brown's conviction, at his sentencing hearing, he requested treatment under the TASC program of the Alcoholism and Substance Abuse Act (Act). Brown stipulated that he had received treatment under the Act in 1981 as a result of a plea of guilty on a burglary charge. In that case, the trial judge had deferred entering judgment and placed Brown under TASC supervision for two years. On appeal, now, Brown claims that he did not receive deferred prosecution but instead, by reason of this plea of guilty, he in fact had been convicted. Thus, he asserts, he was eligible for TASC treatment under section 22 of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6322).

As noted earlier, the trial judge found both defendants guilty here. After making the finding, the judge reviewed the record of

both defendants and found that McNeal's record included one conviction for first degree murder and another for armed robbery, and that the past history of both defendants made them eligible for extended sentences beyond the three to seven years provided for the Class 2 felony of attempted burglary. He then, as previously stated, sentenced each defendant to concurrent terms of 10 years for attempted burglary and three years for possession of burglary tools.

Brown's first issue presented in his appeal is that the trial court committed reversible error when it denied his motion for severance due to the antagonistic defenses between him and McNeal. This occurred, Brown says, because in his own defense, he denied guilt, while defendant McNeal, on the other hand, claimed that Brown had committed the crimes but did so with another companion.

■ A trial court may order separate trials where the joinder of defendants will prejudice one defendant at trial. (Ill. Rev. Stat. 1985, ch. 38, par. 114—9.) When defendants have been indicted jointly, they will usually stand trial jointly unless some problem, like antagonistic defenses, would cause unfair prejudice to one of the defendants. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 540-42, 468 N.E.2d 969, 972.) At a bench trial, however, the law will normally presume that the judge, as trier of fact, can exclude improper evidence from consideration even if some improper material does come in during the trial. *People v. Moore* (1984), 128 Ill. App. 3d 505, 514, 470 N.E.2d 1284, 1290-91.

■ On appeal, Brown claims that the trial testimony elicited by McNeal in cross-examination had implicated him and thus prejudiced him. The record does reflect that two witnesses did identify Brown on cross-examination by McNeal, but both of these witnesses had also identified him during the prosecution's case in chief. Since Brown had already been identified prior to McNeal's cross-examination, we do not find this cross-examination testimony to be a sufficient showing of prejudice due to antagonistic defenses. This evidence was merely cumulative at most and not unduly prejudicial under the circumstances. Consequently, Brown did not demonstrate any error on the part of the trial court in denying severance for defendant Brown.

Brown's second issue raised on appeal is that the trial court committed reversible error when it denied his motion to quash his arrest and suppress any subsequent evidence obtained as a result of the arrest. The trial court found that the police had probable cause for a warrantless arrest of Brown, and for that reason, the trial court also admitted the lineup identifications obtained after Brown's arrest.

■ Police officers may not simply arrest someone but must have probable cause to do so. (*Brown v. Texas* (1979), 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637.) Nonetheless, the officers need only enough knowledge to believe that the person arrested could be guilty of some known offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605, 609.) Additionally, probable cause may be found in a police officer's factual knowledge as interpreted through his prior law enforcement experience. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766, 769.) And, if a trial court finds that the police had such a probable cause in a particular case, a reviewing court should let the finding stand unless it is manifestly erroneous. (*Reynolds*, 94 Ill. 2d at 166, 445 N.E.2d at 769.) If, on the other hand, the arrest is illegal, evidence acquired after the arrest should be suppressed as "fruits of the illegal arrest." *People v. Sampson* (1980), 86 Ill. App. 3d 687, 693-95, 408 N.E.2d 3, 9.

The officers in this case arrested Brown during a surveillance of the car seen at the Sayles burglary, which had Illinois license number RHY707. The police officers also knew at that time that the burglary attempt in question involved two black males. On the evening of the crime, the police had found the car in an alley behind McNeal's home. After watching the car for about 40 minutes, the police officers saw Brown walk out of a gangway, place an object in the car trunk, and head down the alley. The officers followed Brown and arrested him. Subsequently, Brown was placed in a lineup at the police station, where four witnesses of the attempted burglary identified him.

■ We believe that the police officers, acting with knowledge of the attempted burglary, during a surveillance of the car that had the license number identified by the witnesses to the attempted burglary, and having viewed Brown approach the auto and place an object in the trunk, had sufficient probable cause to arrest Brown. Accordingly, we find that the trial court's rulings which denied Brown's motion to quash and admitted the post-arrest lineup identification were proper.

Brown's third issue on appeal is that the trial court committed reversible error when it denied him the opportunity to elect the TASC program in lieu of sentencing. At trial, Brown stipulated that he had received deferred prosecution and treatment under the Act earlier when he pleaded guilty to a burglary charge in 1981. After receiving his stipulation, the court found that Brown was barred by the Act for a second consideration for treatment in lieu of sentencing. On appeal, Brown claims that he never actually received a defer-

ral of prosecution which would bar his elective treatment now, but rather had been convicted and only received treatment as a substitute for the sentencing. Brown argues that, even though he had thus received TASC consideration earlier, the Act only prohibits a second deferral of prosecution, not a second chance at treatment instead of a prison term.

The State asserts that Brown has already waived this issue for purposes of appeal because he did not include it in his written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 198, 522 N.E.2d 1124, 1130, 1135.) Hence, the State contends that this issue should not now be considered. Of course, an appellate court may consider even waived errors where the evidence is closely balanced and a possibility exists that an innocent person may have been convicted because of the issue in question. (*Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1136.) This is what Brown argues here. While we do not find this to be the case here, nevertheless, we will consider Brown's arguments for the purpose of fully treating his entire appeal.

Under the Act in effect at the time of trial, an addict charged with or convicted of a crime could elect under certain circumstances supervised treatment in place of normal sentencing. (Ill. Rev. Stat. 1985, ch. 111½, pars. 6301, 6323.) The Act contained the following relevant provisions:

(1) Section 22 allowed the court to "advise" an addict who had been "charged with a crime" that "any judgment of conviction upon a plea or finding of guilty by the court shall be deferred if he elects to submit to treatment and is accepted." Ill. Rev. Stat. 1985, ch. 111½, par. 6322.

(2) Section 23 allowed the court to advise the addict who had been "convicted of a crime" that he "may be placed on probation if he elects to submit to treatment and is accepted." Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

(3) Section 21 listed exceptions to the treatment options under sections 22 and 23. The important one here excluded any addict who was "charged" with a Class 2 or greater felony and who had "previously been admitted to a treatment program under Section 22" for treatment within the program. Ill. Rev. Stat. 1985, ch. 111½, par. 6321(g).

Brown asserts that his 1981 treatment did not involve a deferred prosecution which would have placed it under section 22. However, this assertion here is contrary to Brown's position at trial. At trial, Brown stipulated that he had pleaded guilty to a burglary charge in 1981 and that the trial judge then deferred entering judgment and

placed him under TASC supervision for two years. On appeal, as stated earlier, Brown now asserts that the stipulation was in error, that actually probation was the sentence for the conviction, and that, consequently, he remains eligible for treatment.

The State notes that the Illinois Revised Statutes define a "conviction" as "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—1—5.) The State contends that, in the absence of a sentence, a judgment of conviction is not final. (*In re J.N.* (1982), 91 Ill. 2d 122, 127, 435 N.E.2d 473, 475.) The State also argues that since Brown elected the treatment program in 1981, this election was in lieu of a sentence and constituted a deferred prosecution under section 22.

■ As a second basis for his contention, Brown argues that he remained eligible for the treatment program, in any event, because it was not the intent of section 21(g) of the Act to make a charged felon ineligible for a second chance at deferred prosecution, but merely to make him ineligible for a second chance at treatment. Illinois appellate courts have not yet specifically considered this exact issue under section 21(g) or its successor in section 10—101(g) of the Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6360—1(g)). Our First District Appellate Court has, however, ruled that because there is a list of disqualifying factors under section 21 this demonstrates that the legislature did not intend all drug addicts to be eligible for alternative treatment under the Act. (*People v. Hamilton* (1987), 155 Ill. App. 3d 555, 558, 508 N.E.2d 385, 389.) Trial courts have interpreted this legislative intent to mean that defendants do not have an absolute right to be sentenced to treatment under the Act even if they are, in some respects, eligible. (*People v. Hirschmann* (1988), 175 Ill. App. 3d 150, 153, 529 N.E.2d 760, 762.) For example, a court may deny treatment if the record indicates that the addict will not comply with the program and is a threat to society. (*Hirschmann,* 175 Ill. App. 3d at 153-54, 529 N.E.2d at 762-63.) Finally, because defendants do not have an absolute right to treatment under the Act, a court's ruling concerning whether an offer of treatment is proper is discretionary and should not be reversed absent arbitrary action or abuse of discretion. *Hirschmann,* 175 Ill. App. 3d at 153, 529 N.E.2d at 762.

At the sentencing hearing here, the trial judge considered the TASC program as an option for Brown but, after deliberation, he gave him concurrent prison terms instead. The judge here found that since section 21(g) of the Alcoholism and Substance Abuse Act

formed part of the listed exemptions under section 21, the treatment program here, as well as deferred prosecution, was barred here. The judge also found that a person who had not succeeded under the benefits of a deferred prosecution and treatment program at an earlier date was probably not a good candidate for the similar treatment now.

■ Brown had stipulated at trial that he had received deferred prosecution and treatment in 1981 and this rendered him ineligible for deferred prosecution under section 22. Hence, we believe that the trial court's reading of section 21(g) was reasonable under the circumstances. We also believe that the court did not abuse its discretion in sentencing Brown to a prison term instead of treatment on the basis of the record.

Brown's fourth issue on appeal is that the State never proved any conduct to support a separate charge of and conviction for possession of burglary tools. Brown contends that what the State did prove concerning the charge merely arose out of the same conduct that led to his conviction for the attempted burglary.

■ A conviction for possession of burglary tools must fall if the conviction rests on the same conduct as a conviction for attempted burglary. (*People v. Blahuta* (1970), 131 Ill. App. 2d 200, 205-06, 264 N.E.2d 819, 826.) A possession conviction will stand, however, where the possession involved some separate conduct. (*People v. Cox* (1979), 71 Ill. App. 3d 850, 862, 389 N.E.2d 1238, 1243-44.) In *Blahuta* the defendant was caught with his tools in the act of attempted burglary. Since there was no separate act, however, the court did not find Blahuta guilty of the possession of burglary tools. In *Cox* the court found the act of carrying tools from the burglary to be sufficient separate conduct to support a separate charge of possession.

Brown relies on *Blahuta* because his possession of the burglary tool occurred at the scene of the attempted burglary. He characterizes all activity around the Sayles property as a single episode of conduct. The State relies on *Cox*, asserting that Brown both used the screwdriver in his attempt to break into the buildings on the Sayles property and then also left the scene while carrying the screwdriver away with him.

■ Brown's conduct in carrying the screwdriver away from the Sayles property does constitute identifiable, separate conduct sufficient for a separate conviction on the possession count. Thus, we find no error in Brown's conviction and sentence for possession of burglary tools.

McNeal's first contention on appeal is that the trial court com-

mitted reversible error when it admitted evidence of another burglary. The court allowed the State to present evidence that showed McNeal and his car were seen at a burglary committed 4½ blocks away from the Sayles attempted burglary and at about the same time.

■■ Generally, evidence of other offenses is inadmissible. It may be admitted under certain circumstances, however, to show such things as identification, common scheme, or intent. (*People v. Alexander* (1983), 93 Ill. 2d 73, 79, 442 N.E.2d 887, 890.) The admission of other evidence to prove identification, common scheme or intent is within the discretion of a trial judge and, again, should not be reversed unless the judge has abused that discretion. *People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702.

Of course, the information from one crime can also help identify a defendant as a criminal who operates in a particular manner. (*People v. Kristovich* (1975), 32 Ill. App. 3d 979, 984, 336 N.E.2d 772, 777.) McNeal claims, however, that mistaken identity was not an issue raised in defense. Nonetheless, McNeal did claim at trial that someone else drove Brown in the burglary car. In order to establish the identity of McNeal as one of the burglars at the Sayles home, the State presented the evidence that a car with two black males owned and driven by McNeal at the Sayles attempted burglary was also seen at a nearby burglary.

Evidence of other crimes may also be used to establish intent. (*People v. Sayles* (1985), 130 Ill. App. 3d 882, 889-90, 474 N.E.2d 870, 876-77.) Criminal intent can be established by showing general areas of similarity. (*People v. Bartall* (1983), 98 Ill. 2d 294, 309-14, 456 N.E.2d 59, 66-70.) At the trial here, the State showed that McNeal had burglarized another nearby home and used the same general procedure to approach the Sayles property. Although McNeal argues that intent was not an issue raised in defense, the State maintains that, on the contrary, regardless of McNeal's defenses, it needed to prove intent to sustain the charge of attempted burglary.

■■ We find that the trial court properly exercised its discretion in admitting the evidence of the prior burglary to support the State's contentions concerning identity and intent. We therefore find there was no error in this regard.

McNeal's second assertion on appeal is that the trial court improperly admitted a certified copy of an application for a vehicle title or license registration from the office of the Secretary of State. McNeal claims that the copy itself was improper because it had been prepared especially for trial. He also contends that the State failed

to lay a foundation for admitting the application because it never questioned anyone from Lesley Oldsmobile, which originated the registration at the time the car was purchased. Hence, McNeal argues, the State had not established his control of the auto at the time of the attempted burglary.

■■ Illinois law permits the admission of a governmental business record into evidence if that record was made in "the regular course of any business." (Ill. Rev. Stat. 1985, ch. 38, par. 115—5.) In effect, a court must determine that the public record was either authorized by statute or regulation or was required by the nature of the public office. The court must also find that the public record was properly recorded and maintained. *People v. Williams* (1986), 143 Ill. App. 3d 658, 663, 493 N.E.2d 362, 366.

■■ The statute further provides that the Secretary of State may prepare certified copies of records in his office and that these copies "shall be admissible in any proceeding in any court in like manner as the original thereof." (Ill. Rev. Stat. 1985, ch. 95½, par. 2—108.) Illinois courts have accepted certified copies of these records for over a century. (See, *e.g.*, *Stevison v. Earnest* (1875), 80 Ill. 513.) This common-law rule developed in part because of the danger that public records would be lost or damaged if the originals had to always be displayed in court. (E. Cleary, Cleary & Graham's Handbook of Illinois Evidence §902.2, at 641 (4th ed. 1984).) Obviously, unless public officials stockpile certified copies, many of the copies used in court must be prepared during the course of litigation.

At trial, the State introduced a certified copy of the public record of McNeal's license application through the testimony of Rosanne Quattrocki, a manager from the motor vehicle facility in Chicago. She detailed the steps required by law for creating a record of license application. Such a procedure begins when a dealer submits a registration form for a car he or she has just sold. Here, the State introduced the certified copy of an application that showed Willie F. McNeal purchased a car from Lesley Oldsmobile on July 3, 1985, and received license plate number RHY707 on August 7, 1985. At trial, Ms. Quattrocki described the copy as a true and correct copy certified by the Secretary of State's office on December 3, 1985.

The State also argues that, even assuming the court erroneously admitted McNeal's application record, the error was harmless because the same point was also established by other evidence. (*Williams*, 143 Ill. App. 3d at 663, 493 N.E.2d at 366.) At trial, the police officer who initiated the surveillance of the car traced from the attempted burglary testified that McNeal entered the car during the

surveillance. Additionally, defendant McNeal's aunt testified that all members of her household, including McNeal, used the car.

We believe that a proper foundation was established for the admission of McNeal's license registration, and, in any event, the State also provided additional evidence of McNeal's control of the car, as noted above. Therefore, we find that the trial court properly exercised its discretion when it admitted the record of McNeal's license registration and, even if there had been error, the error would have been harmless.

McNeal's third issue on appeal is that the State never proved a necessary element for the charge of possession of burglary tools. McNeal contends that since the State never demonstrated he owned, used, or held the tools, the possession element of the offense is missing from the necessary proof.

Under the Illinois statute, a person commits the crime of "possession of burglary tools when he possesses any key, tool, [or] instrument *** suitable for use in breaking into a building *** with intent to enter any such place and with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1985, ch. 38, par. 19—2(a).) Possession is an element the State must prove.

The State argues that the possession element was proven under the theory of accountability, *i.e.*, a person is responsible if "he solicits, aids, abets, agrees or attempts to aid" some other person "in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).) To be accountable for the possession of burglary tools, a person must aid the actual possession or control the place where the tools were kept. (*People v. Obrochta* (1986), 149 Ill. App. 3d 944, 952-53, 500 N.E.2d 1059, 1063-64.) This means, however, that a person can be held accountable for possession if possession was part of a common design to commit some other crime such as burglary. *People v. Waln* (1988), 169 Ill. App. 3d 264, 274, 523 N.E.2d 1318, 1325.

The State further argues that McNeal is accountable under the facts here because of the common design of Brown and himself in the attempted burglary. The trial record recounts Brown's use of the screwdriver and the fact that McNeal owned the car and drove Brown to and from the scene of the attempted burglary. Although, unlike the defendant in *Waln*, McNeal did not own or control any place where burglary tools were found, he nevertheless did carry the screwdriver in his car as he drove Brown to and from the attempted burglary site. Thus, McNeal did aid and abet Brown's attempted burglary by transporting him to and from the attempted burglary. Ac-

cordingly, we find that the facts elicited at trial do support McNeal's conviction for possession of burglary tools under an accountability theory of responsibility. Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).

McNeal's fourth issue on appeal is that the trial court erred by giving him an extended sentence based on statutory provisions which are unconstitutionally vague. In his view, the Unified Code of Corrections is unconstitutionally vague in that it allows different treatment for felons with prior convictions and because it bases this difference on the different classes of felonies.

McNeal admits that he did not raise this issue at the sentencing hearing or in a post-sentencing motion; he claims, however, that we should consider this issue under the plain error rule of the Illinois Supreme Court. (107 Ill. 2d Rules 615(a), (b).) Under these circumstances, Illinois courts may address a constitutional argument even though the defendant has technically waived his right to appeal. See *People v. Baker* (1983), 114 Ill. App. 3d 803, 809, 448 N.E.2d 631, 635.

The Unified Code of Corrections allows courts to consider certain factors as a basis for imposition of an extended-term sentence. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b).) Among reasons for which a court may impose an extended sentence is "a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1).) This, the language of "the same or greater class felony," is what McNeal argues deprives him of his constitutional rights.

Illinois courts have not ruled on this precise point. They have, however, reviewed other provisions in section 5—5—3.2 which were challenged on the grounds of impermissible vagueness. (See, *e.g.*, *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1225.) Sentencing statutes, like other statutes, are presumptively valid, and a statute is not too vague unless the ultimate decision rests on "whims" rather than "any objective criteria or facts." *Clark*, 102 Ill. App. 3d at 423, 429 N.E.2d at 1262.

In this case, McNeal was convicted of a Class 2 felony, which carries a term of three to seven years. His prior convictions included one for first degree murder, a separate class felony, and one for armed robbery, a Class X felony. Under the Illinois statute, prior conviction for a more serious felony renders a newly convicted felon eligible for an extended sentence. After reviewing the objective facts about these higher class felony convictions committed by McNeal, the trial judge sentenced McNeal to an extended term of 10 years.

We find that McNeal waived the constitutional issue here, but, even if we considered it under the plain error rule, we believe that the statutory wording "same or greater class felony" does provide objective criteria for sentencing and is not unconstitutionally vague. We find the 10-year sentence given by the trial court to be proper under the circumstances.

For all of the above reasons, the judgments of the circuit court of Cook County for defendants Brown and McNeal are affirmed.

Judgments affirmed.

McNAMARA and EGAN JJ., concur.